UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| HOWARD BURRITT,<br><br>                   Petitioner,<br><br>        vs.<br><br>DARIN YOUNG, WARDEN; AND<br>ATTORNEY GENERAL FOR THE<br>STATE OF SOUTH DAKOTA,<br><br>                   Respondents. | 5:14-CV-05078-JLV<br><br><br>**REPORT & RECOMMENDATION** |

## INTRODCUTION

Petitioner, Howard Burritt, ("Burritt") an inmate at the South Dakota State Penitentiary, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 and has paid the $5.00 filing fee.

## JURISDICTION

The pending matter was referred to this Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the October 16, 2014, standing order of the Honorable Jeffrey L. Viken, Chief District Judge.

## BACKGROUND

Mr. Burritt was convicted in September, 2011, of attempted third degree rape. On January 31, 2012, he was sentenced to five years' imprisonment with two years suspended. Mr. Burritt filed a direct appeal, alleging the trial court erred by denying his motion for judgment of acquittal and judgment notwithstanding the verdict. Mr. Burritt's conviction was affirmed by the

South Dakota Supreme Court on March 25, 2013. See State v. Burritt, 828 N.W.2d 548  (S.D. 2013) (unpublished).   He did not file a petition for certiorari to the United States Supreme Court.   Mr. Burritt filed a *pro se* state habeas corpus petition which is dated July 23, 2013, with a notarized signature, but which was not docketed in the state court files until August 13, 2013.  In his *pro se* state habeas petition, Burritt alleged:

> (1) Ineffective Assistance of Counsel
> > (A)    Failure to assist him on conflict of interest issues;
> > (B)    Failure to advise the court of bias/prosecutorial misconduct;
>
> (2) Violation of his Due Process rights
> > (A)    The prosecutor was once Burritt's defense attorney;
> > (B)    Burritt's attorney/client privileges were violated;
> > (C)    Burritt's prosecution was a blatant conflict of interest and violation of the prosecutor's ethical standards;
>
> (3)  Bias of counsel/misconduct
> > (A)    The prosecutor violated Burritt's Sixth Amendment right to counsel because she once represented Burritt;
> > (B)    The prosecutor obtained a grand jury indictment against Burritt knowing she once represented Burritt;
> > (C)    The prosecutor changed venue to the prejudice of Burritt.

In a letter decision, South Dakota State Circuit Court Judge Jeff Davis denied Mr. Burritt's *pro se* state habeas petition ostensibly on the same day it was filed, August 13, 2013.  See Doc. 1-4.  That letter decision set forth a verbatim quote from a transcript from Mr. Burritt's criminal case which was one and one-half pages in length.  Id.  Judge Davis did not appoint counsel nor conduct an evidentiary hearing.  Id.  He denied a certificate of probable cause. Id.

2

On August 27, 2013, Mr. Burritt attempted to request a certificate of probable cause from the South Dakota Supreme Court.  <u>See</u> Docket No. 1-7. Apparently, he first filed his request with the state circuit court, which returned his documents to him on September 3, 2013.  <u>See</u> Docket No. 1-5. Mr. Burritt must have then sent the same documents to the South Dakota Supreme Court because that court sent him a letter dated September 12, 2013. <u>See</u> Docket No. 1-6.  The Supreme Court refused to entertain Mr. Burritt's request and returned his documents to him because they were not in proper statutory form to invoke the Court's jurisdiction.  <u>Id.</u>

Mr. Burritt then filed his first federal habeas petition pursuant to 28 U.S.C. § 2254 on March 24, 2014.  <u>See</u> <u>Burritt v. Young</u>, CV 14-5021 (D.S.D.) ("Burritt I").  In his federal petition, Mr. Burritt alleged:

(1) Ineffective Assistance of Counsel
    (A)    Ineffective and improper voir dire;
    (B)    Failure to request change of venue;
    (C)    Failure to object to judicial interference when questioning a witness;
    (D)    Failure to subpoena witnesses;
    (E)    Failure to raise constitutional issues on appeal.

(2)    Denial of Due Process
    (A)    Burritt never received *Miranda* warnings but his in-custody statements were used against him at trial.  Burritt's attorney never made a motion to suppress or objected to the use of Burritt's statements.

Mr. Burritt admitted he did not raise any of these claims on direct appeal nor in his first state habeas corpus action.   The magistrate judge recommended Mr. Burritt's petition be dismissed as unexhausted rather than stayed pursuant to <u>Rhines v. Weber</u>, 544 U. S. 269 (2005).  <u>See</u> <u>Burritt I</u>,

3

Docket No. 8 (D.S.D. May 27, 2014).  Mr. Burritt's first federal petition was not a mixed petition but rather it contained *no* exhausted claims.  Id.  The district court ultimately dismissed Mr. Burritt's first federal petition without prejudice on July 21, 2014.  Id. at Docket No. 9 (D.S.D. July 21, 2014).

Mr. Burritt returned to state court.  His attempt to exhaust the unexhausted claims, however, was unsuccessful.  On July 25, 2014, Mr. Burritt filed a "Motion for Leave to File Second Petition for Writ of Habeas Corpus."  See Doc. 1 at p. 4 (¶ c); Docket No. 1-9.  On October 15, 2014, Judge Davis dismissed the petition because he concluded Mr. Burritt did not meet the standards for filing a Second or Subsequent Application.  See Docket No. 1-9.  Specifically, Judge Davis found that Mr. Burritt did not present newly discovered evidence nor was there a new rule of constitutional law which applied retroactively to Mr. Burritt's claims.  Id.  Judge Davis held Mr. Burritt could have raised all the claims he attempted to raise in his second petition in either his direct appeal or his first state habeas petition.  Id.[1]  Thereafter, on

---

[1] SDCL § 21-27-5.1 states:

> **Second or subsequent application for writ—Leave to file—Dismissal**
> A claim presented in a second or subsequent habeas corpus application under this chapter that was presented in a prior application under this chapter or otherwise to the courts of this state by the same applicant shall be dismissed.
>
> Before a second or subsequent application for a writ of habeas corpus may be filed, the applicant shall move in the circuit court of appropriate jurisdiction for an order authorizing the applicant to file the application.

4

October 24, 2014, Mr. Burritt filed the instant § 2254 petition, his second in this court.

      Reviewing Mr. Burritt's petition, it appeared to this court that his claims in the instant petition may be barred either by the statute of limitations, the doctrine of procedural default, or both.  See Burritt v. Young, Civ. No. 14-5078, Docket No. 4 (D.S.D. Oct. 31, 2014) ("Burritt II").  Accordingly, the court issued an order to show cause to both parties, directing both to address these two issues.  Id.  Briefing has now been received by both parties and the court addresses the two relevant issues.

**DISCUSSION**

**A.**    **AEDPA Statute of Limitations**

      Section 2244, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), contains a one year statute of limitations providing in relevant part as follows:

    **(d)**    **(1)** A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the

---

The assigned judge shall enter an order denying leave to file a second or successive application for writ of habeas corpus unless:

The applicant identifies newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable finder of fact would have found the applicant guilty of the underlying offense; or
The application raises a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court and the South Dakota Supreme Court, that was previously unavailable.  The grant or denial of an authorization by the circuit court to file a second or subsequent application shall not be appealable.

5

judgment of a State court.  The limitation period shall run from the latest of—

> **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> **(B)** the date on which the impediment to filing an application created by State action in violation the Constitution or laws of the United States is removed, if the applicant  was prevented from filing by such State action;
>
> **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;
>
> **(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

> **(2)**   The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

*See* 28 U.S.C. § 2244(d)(1) and (2).

A judgment or state conviction is final, for purposes of commencing the statute of limitation period, at "(1) either the conclusion of all direct criminal appeals in the state system, followed by either the completion or denial of certiorari proceedings before the United States Supreme Court; or (2) if certiorari was not sought, then by the conclusion of all direct criminal appeals in the state system followed by the expiration of the time allotted for filing a petition for the writ."  Smith v. Bowersox, 159 F.3d 345, 348 (8th Cir. 1998). The time allotted for filing a petition for writ of certiorari with the Supreme

6

Court is ninety days.  See Sup. Ct. R. 13.1; Jihad v. Hvass, 267 F.3d 803, 804 (8th Cir. 2001).

The statute of limitation for § 2254 petitions is subject to tolling.  See 28 U.S.C. § 2244(d)(2).  This one-year statute of limitation period is tolled, or does not include, the time during which a properly filed application for state post-conviction relief or other collateral review is pending in state court.  Faulks v. Weber, 459 F.3d 871, 873 (8th Cir. 2006); 28 U.S.C. § 2244(d)(2).

The phrase "post-conviction or other collateral review" in § 2254's tolling provision encompasses the "diverse terminology that different States employ to represent the different forms of collateral review that are available after a conviction." Duncan v. Walker, 533 U.S. 167, 177 (2001).  Thus, § 2244's tolling provision "applies to all types of state collateral review available after a conviction." Id.

State collateral or post-conviction proceedings "are 'pending' for the period between the trial court's denial of the [post-conviction relief] and the timely filing of an appeal from it." Maghee v. Ault, 410 F.3d 473, 475 (8th Cir. 2005) (citing Peterson v. Gammon, 200 F.3d 1202, 1203 (8th Cir. 2000)); see also Johnson v. Kemna, 451 F.3d 938, 939 (8th Cir. 2006) (an application for state post-conviction review is pending until a mandate is issued).

However, state proceedings are not "pending" for the ninety-day period "following the final denial of state post-conviction relief, the period during which an unsuccessful state court petitioner may seek a writ of certiorari from the United States Supreme Court." Jihad, 267 F.3d at 805.  Additionally,

7

"[s]tate proceedings are not *pending* during the time between the end of direct review and the date an application for state [post-conviction relief] is filed." Maghee, 410 F.3d at 475 (citing Painter v. Iowa, 247 F.3d 1255, 1256 (8th Cir. 2001)) (emphasis added).  In short, the one-year statute of limitations begins to run after the state conviction is final, is tolled while state habeas proceedings are pending, and then begins running again when state habeas proceedings become final.  Curtiss v. Mount Pleasant Corr. Facility, 338 F.3d 851, 853 (8th Cir. 2003).  However, the AEDPA statute of limitations is *not* tolled during the time a federal habeas petition is pending.  Duncan, 533 U.S. at 177-80.

In Carey v. Saffold, 536 U.S. 214, 216-17 (2002), the Supreme Court had to determine whether to count--or to toll--the time period between the trial court's denial of habeas relief on Saffold's state court habeas petition and his next pleading filed in the state procedural process for pursuing higher-court review.  In California's statutory habeas scheme, when the trial court denies habeas relief, instead of appealing, the petitioner files a new original state habeas petition in the appellate court.  Id.  Instead of requiring a subsequent, new habeas petition to be filed within a set period of time, however, California's scheme only required that subsequent petitions be filed within a "reasonable" time after denial of relief at the prior level.  Id. at 221.  Five days elapsed between Saffold's denial of habeas relief in the trial court and his filing of his next original petition with the state intermediate appellate court; then four and one-half months elapsed between the decision of the intermediate court and Saffold's filing of his new petition with the state supreme court.  Id. at 217-18.

8

The Saffold Court held that this period of time was tolled under § 2244(d)(2) if Saffold's subsequent petitions were timely because Saffold's complete habeas tour through the state court system, from lowest to highest court, could be said to be "pending," "in continuance," or "not yet decided" during this time.  Id. at 219-21, 225.  Because California used a "reasonableness" standard instead of a fixed time frame for appeals, the Court remanded for a determination of whether Safford's subsequent filing of habeas petitions before state appeals courts were timely under the California "reasonableness" standard.  Id. at 225-27.

The Eighth Circuit applied Saffold in Williams v. Bruton, 299 F.3d 981 (8th Cir. 2002).  In that case, Williams petitioned the Minnesota state trial court for habeas relief, which that court denied.  Id. at 982.  Under state law, Williams had 60 days to appeal the trial court's denial of habeas relief, although Williams did not pursue such an appeal.  Id. at 982-83.  The Eighth Circuit held that the AEDPA statute of limitations was tolled for that 60-day period, even though Williams never in fact filed such an appeal.  Id. at 983-84.  This holding seems to be at odds with the Court's holding in Saffold.  Saffold did not hold that the time period for appealing always acted to toll the AEDPA limitations period.  Rather, it held that the appeal time was tolled if the petitioner timely appealed under state rules.  Saffold, 536 U.S. at 225-27.

Next, the Supreme Court decided Evans v. Chavis, 546 U.S. 189, 195 (2006), which again answered an AEDPA limitations tolling question against the backdrop of the California state habeas scheme.  Chavis filed a state

9

habeas petition before the trial court, which denied relief, and before the state intermediate appellate court, which also denied relief.  Id.  He then waited over three years before filing his next habeas petition before the state supreme court.  Id.  The supreme court denied the petition in a single sentence without indicating the grounds for denial of relief.  Id.  The Ninth Circuit held that because the state supreme court did not expressly deny habeas relief on timeliness grounds, Chavis' state habeas matter was timely and, hence, was "pending" for this entire period, thus rendering his federal habeas petition timely under AEDPA.  Id. at 196-97.  The Supreme Court reversed, holding that the federal court itself must determine whether Chavis' three-year delay was timely under California law—independent of what the state courts did.  Id. at 200-01.  The Court held that Chavis' three-year delay was not timely and, consequently, that Chavis could not pursue federal habeas relief.  Id.

The Eighth Circuit applied Saffold again in 2009, after the Evans decision, but without mentioning or discussing Evans.  See Streu v. Dormire, 557 F.3d 960, 965-68 (8th Cir. 2009).  Streu had filed a motion in state court to reopen his state habeas proceedings.  Id. at 962.  The state trial court denied the motion and Streu had a set period of time within which to appeal.  Id.  He did not pursue an appeal during that set time, but six months later he filed a request to file an appeal out of time.  Id.  The state court granted that request.  Id.  The Eighth Circuit, citing Williams, held that Streu's AEDPA limitations period was tolled from the date that the trial court denied his motion to reopen until his appeal period expired, even though he never filed a timely appeal

10

during the allowed period.  Id. at 966.  This is contrary to both Safford and Evans because there was no *timely* appeal filed by Streu.  However, the Eighth Circuit pointed out that the whole purpose of the AEDPA limitations period is based on comity for state court decisions.  Id. at 964.  The Steu decision, then, can be understood in part based on the rationale that, if the state courts ultimately excused Streu's untimely appeal (which they did), then federal courts should too.  Streu, 557 F.3d at 964.

The statute of limitations on Mr. Burritt's federal habeas relief began to run 90 days after the South Dakota Supreme Court affirmed Mr. Burritt's judgment on direct appeal.  That date was June 24, 2013 (90 days after March 25, 2013).  It was suspended when Mr. Burritt filed his first state habeas petition and resumed running when that petition was dismissed.  But the parties disagree about these seemingly indisputable dates.

Mr. Burritt asserts his petition was pending as of the date on the petition:  July 23, 2013.  See Burritt II, Docket No. 1-3, Docket No. 6 at p. 10.  Respondents assert the petition was not pending until it was filed by the clerk of the circuit court, which filing occurred on the same date the circuit court judge entered his order denying relief: August 13, 2013.  Id. at Docket No. 5, at p. 4.

Additionally, the parties dispute whether Mr. Burritt's attempted, but ineffectual, effort to obtain a certificate of probable cause from the South Dakota Supreme Court following the denial of his first state habeas petition constituted "pending" state collateral proceedings which would toll the running

11

of the statute of limitations.  Mr. Burritt made these attempts between August 27, 2013, and September 12, 2013.  Mr. Burritt asserts this time period should be tolled; respondents argue it should not.  The court addresses the latter issue first.

> **1.    Was Mr. Burritt's Attempt to Obtain a Certificate of Probable Cause from the South Dakota Supreme Court a "Properly Filed" Application for Collateral Review?**

As indicated above, the one-year statute of limitations period is tolled, or does not include, the time during which a "properly filed application for State post-conviction or other collateral review" is "pending" in state court.  <u>Faulks</u>, 459 F.3d at 873; 28 U.S.C. § 2244(d)(2).  "An application is 'filed,' as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement into the official record."  <u>Artuz v. Bennett</u>, 531 U.S. 4, 8 (2000).  "And an application is *'properly filed"* when its delivery and acceptance are in compliance with the applicable [state] laws and rules governing filings.  These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee."  <u>Id.</u> (emphasis in original).  "Courts interpret the words 'properly filed' narrowly."  <u>Beery v. Ault</u>, 312 F.3d 948, 950-51 (8th Cir. 2002) (citing <u>Lookingbill v. Cockrell</u>, 293 F.3d 256, 260-61 (5th Cir. 2002)).

The relevant South Dakota statute governing this issue provides as follows:

A final judgment or order entered under this chapter may not be
reviewed by the Supreme Court of this state on appeal unless the
circuit judge who renders the judgment or a justice of the Supreme
Court issues a certificate of probable cause that an appealable
issue exists.  A motion seeking issuance of a certificate of probable
cause shall be filed within thirty days from the date the final
judgment or order is entered.  The issuance or refusal to issue a
certificate of probable cause is not appealable.  However, a party
may, upon the circuit court judge's refusal to issue a certificate of
probable cause, file a separate motion for issuance of a certificate
of probable cause with the Supreme Court within twenty days of
the entry of the circuit judge's refusal.  Any party filing a motion
with the Supreme Court shall serve a copy of the motion upon the
opposing party, who shall have ten days to respond.  The applying
party shall then have five days to reply to such response.  If a
certificate of probable cause is issued the appeal may be brought
by an applicant or the state within thirty days after entry of the
certificate of probable cause.

Service of either a motion for certificate of probable cause or of an
appeal must be made upon both the attorney general and the
appropriate state's attorney when the motion is made or the appeal
is taken by the party seeking the habeas corpus relief.

See SDCL § 21-27-18.1.

Here, Mr. Burritt first tried to make a motion to the state supreme court

by filing his motion with the circuit court.  That was clearly incorrect according

to the statute as the statute requires that the motion be filed with the state

supreme court.  Id.  A motion filed with the wrong court is not a "properly filed

motion" under § 2254(d).  See Artuz, 531 U.S. at 8.  See also Jackson v. Ault,

452 F.3d 734, 736 (8th Cir. 2006) ("properly filed motion" must be in

compliance with state procedural requirements).  Accordingly, the circuit court,

upon receipt of Mr. Burritt's motion, returned it to him on September 3, 2013,

with instructions to file the motion with the supreme court.  See Docket No. 1-

5.

13

Mr. Burritt then apparently did file the motion with the state supreme court.  However, that court rejected Mr. Burritt's motion, stating that it was being returned because it was "not in proper statutory form to invoke this Court's appellate or original jurisdiction."  <u>See</u> Docket No. 1-6.  Although the supreme court did not explain how Mr. Burritt's motion was lacking, this court makes two observations.  Section 21-27-18.1 requires the movant to serve a copy of his motion on both the attorney general for the state of South Dakota as well as the local state's attorney involved in the underlying criminal action.  <u>See</u> SDCL § 21-27-18.1.  Mr. Burritt's motion contained a certificate of service indicating that service of the motion was made on the attorney general, but not the local state's attorney.  <u>See</u> Docket No. 1-7 at p. 4.

Additionally, the statute gave Mr. Burritt only 20 days in which to move the supreme court for a certificate of probable cause following the state circuit court's denial of a certificate of probable cause.  <u>See</u> SDCL § 21-27-18.1.  Judge Davis denied a certificate of probable cause on August 13, 2013.  <u>See</u> Docket No. 1-4.  Therefore, it was incumbent on Mr. Burritt to file a motion for a certificate of probable cause before the state supreme court on or before September 2, 2013.  <u>See</u> SDCL § 21-27-18.1.  Mr. Burritt clearly missed this 20-day deadline as the state circuit court returned his motion to him on September 3, 2013.  <u>See</u> Docket No. 1-5.  Even if Mr. Burritt received his returned motion on September 3 and put it back in the mail to the state supreme court the same day, he was already outside the 20-day window.  Most probably, Mr. Burritt received the returned motion on September 4, making

14

September 5 the earliest possible date the supreme court could have received his motion (if the returned motion was received by Mr. Burritt on September 4 and placed in the mail again the same day).  Thus, Mr. Burritt's motion to the state supreme court was untimely.  An untimely motion is not a "properly filed motion" under § 2254(d).  See Pace v. DiGuglielmo, 544 U.S. 408, 411-13 (2005); Artuz, 531 U.S. at 8.  See also Jackson, 452 F.3d at 736.

State procedural rules must be firmly established, regularly followed, and consistently applied if they are to have an effect on the AEDPA statute of limitations.  Nelson v. Norris, 618 F.3d 886, 891-92 (8th Cir. 2010) (citing Walker v. Norris, 436 F.3d 1026, 1029-32 (8th Cir. 2006)).  The South Dakota Supreme Court strictly and regularly enforces the 20-day time limit under SDCL § 21-27-18.1.  See Hannon v. Weber, 2001 S.D. 146, ¶¶ 4-8, 638 N.W.2d 48, 49-50.

In Hannon, the state supreme court received Hannon's motion for a certificate of probable cause one day after the 20-day deadline had expired.  Id. The court rejected the motion as untimely.  Id.  The court specifically rejected Hannon's request to deem the motion filed as of the date it was placed into the mail; the court held that it was "filed" when the clerk of the supreme court actually received it.  Id.  This is in accord with United States Supreme Court precedent.  See Artuz, 531 U.S. at 8 (citing United States v. Lombardo, 241 U.S. 73, 76 (1916) ("A paper is filed when it is delivered to the proper official and by him received and filed.").  The court also rejected Hannon's request that

15

the court add three extra days to the 20-day deadline to allow for mailing time. Hannon, 2001 S.D. 146, ¶¶ 4-8, 638 N.W.2d at 49-50.

The court concludes that Mr. Burritt's unsuccessful attempt to file a motion for a certificate of probable cause with the state supreme court should not toll the running of the AEDPA statute of limitations because his attempt did not constitute a "properly filed" motion for collateral relief under § 2254(d).

Nor is Mr. Burritt entitled to tolling for the 20-day appeal period after Judge Davis denied his first habeas petition.  Under the Williams case, Mr. Burritt would be entitled to tolling for the 20-day appeal period if he had never attempted to appeal.  Williams, 299 F.3d at 983-84.  Under the Streu, Saffold, and Evans cases, if he attempted to appeal and that appeal was timely, or if the state court excused the untimeliness of the appeal, then Mr. Burritt would likewise be entitled to the benefit of tolling for the 20-day appeal period. Evans, 546 U.S. at 197; Saffold, 536 U.S. at 225-27; Streu, 557 F.3d at 966.

Mr. Burritt's case fits none of these "safe harbors."  He attempted to appeal, unlike the petitioner in Williams.  His appeal was untimely, like the petitioner in Evans.  And, unlike the petitioner in Streub, the state court did not excuse the untimeliness of Mr. Burritt's untimely appeal.  See Docket No. 1-6.  Therefore, under the rationale of all of these cases, Mr. Burritt is not entitled to tolling for the 20-day appeal period following Judge Davis' denial of his first state habeas petition.

The court is aware of the anomalous upshot of these cases.  If a petitioner sits on his hands and does not attempt to appeal, he gets the benefit

16

of tolling for the appeal period.  <u>Williams</u>, 299 F.3d at 983-84.  If a petitioner attempts to appeal, but does so in an untimely fashion, he does not get the benefit of tolling for the appeal period, <u>Evans</u>, 546 U.S. at 197, unless the state court excuses the untimeliness of the appeal, <u>Streu</u>, 557 F.3d at 966.  Thus, the petitioner who tries to do the right thing but fails is penalized while the petitioner who does not try to do the right thing is rewarded.

To this court, the <u>Williams</u> holding seems at odds with the entire AEDPA scheme which encourages habeas petitioners to present their cases fully in state court through the entire hierarchy of a state's appellate process before presenting their claims in federal court.  <u>Rose v. Lundy</u>, 455 U.S. 509, 518 (1982).  However, the United States Supreme Court has not addressed the precise issue presented in <u>Williams</u>—i.e. whether a habeas petitioner should get the benefit of tolling during the time that a state habeas ruling could have been appealed but was not.  The <u>Evans</u> and <u>Saffold</u> cases deal only with cases where the habeas petitioner *did* appeal in state court.  And, the <u>Williams</u> holding is not inconsistent with the rule that a petitioner gets the benefit of tolling during the 90-day period when he could seek a writ of certiorari before the United States Supreme Court following a direct appeal, whether the

petitioner pursues such a writ or not.  Williams, 299 F.3d at 982.[2]

Regardless of whether the result is an anomaly, this court must adhere to Williams until overruled by the Eighth Circuit or the Supreme Court.  This court likewise must adhere to Evans, Saffold, and Streu.  The result of the confluence of all of these cases is that Mr. Burritt is not entitled to tolling for the 20-day appeal period following Judge Davis' denial of his first habeas petition.

### 2.    When Was Mr. Burritt's First State Petition First Pending?

Mr. Burritt asserts that his first state habeas petition should be deemed to have been pending as of the date on the petition:  July 23, 2013.  Obviously, given the legal precedent discussed immediately above, that is not correct.  Under both South Dakota law and United States Supreme Court precedent, a pleading is not "filed" until it is received by the clerk of court for inclusion into the official record.  Artuz, 531 U.S. at 8; Lombardo, 241 U.S. at 76; Hannon, 2001 S.D. 146, ¶¶ 4-8, 638 N.W.2d at 49-50.

---

[2] The 90-day rule, however, unlike the holding in Williams, has a firm basis in the text of AEDPA itself.  AEDPA states in relevant part:  "The limitations period shall run from the latest of--the date on which the judgment became final by the conclusion of direct review *or the expiration of the time for seeking such review;*"  See 28 U.S.C. § 2244(d)(1)(A) (emphasis added).  The period allowed for petitioning for a writ of certiorari in the Supreme Court after a decision of the highest state court is 90 days.  See Sup. Ct. R. 13.1.  There is nothing in AEDPA which lends similar textual support to the holding in Williams that a habeas petitioner is entitled to tolling for periods of appeal in state court following the entry of a decision of a lower court denying habeas relief.  In fact, despite the holding in Williams, the Eighth Circuit has held that habeas petitioners are *not* allowed tolling for the 90-day period for petitioning for certiorari after the conclusion of a state's appeal process in connection with the petitioner's state habeas petition.  Jihad, 267 F.3d at 805.

18

Respondent asserts that Mr. Burritt's first state petition for habeas relief was "filed" in state circuit court on August 13, 2013, because that is the day the clerk of court docketed the petition.  It also just happens to be the date that Judge Davis issued his decision denying Mr. Burritt's petition without a hearing.  Compare Docket No. 1-3 with Docket No. 1-4.  This court does not accept respondent's assertion.

First of all, respondent's position defies credulity.  Respondent would first suppose that it took 21 days for the United States Postal Service to deliver Mr. Burritt's petition from Sioux Falls, South Dakota, to Rapid City, South Dakota.  This, despite the fact that all other mailings sent by Mr. Burritt from Sioux Falls obviously reached their destination within one or two days.  See Docket Nos. 1-7, 1-5, and 1-6 (showing that Mr. Burritt's motion to the supreme court dated August 27, 2013, was received in Rapid City at least by September 3, with a three-day Labor Day weekend intervening, and that the mail from Rapid City to Sioux Falls reached Mr. Burritt within sufficient time to allow him to send the motion again and receive it back the second time by September 12).  The court takes judicial notice that intrastate mail usually reaches its destination within one to two business days.

The other aspect of respondent's assertion that defies credulity is that it would require this court to believe that all of the following actions took place in a single day, August 13:  (1) Judge Davis received Mr. Burritt's first habeas petition; (2) Judge Davis read through it and all the accompanying materials; (3) Judge Davis located the transcript from Mr. Burritt's underlying criminal

19

case and read it, locating the precise passage dealing with his habeas claims; (4) Judge Davis sat down and wrote a decision denying relief to Mr. Burritt, including replication of one and one-half pages of verbatim testimony from the transcript; (5) Judge Davis got his decision typed; and (6) Judge Davis proofread, signed, and filed his decision with the clerk before the end of the same day on which he first received the petition.

The more likely scenario is that the clerk of court received Mr. Burritt's petition on July 24 or 25, 2013, and that the petition was given to Judge Davis without first docketing it in the court's record. That Judge Davis then held the petition in his chambers until such time as he had researched, written, typed and signed his opinion denying relief to Mr. Burritt. Then, probably, Judge Davis handed the petition together with his opinion to the clerk of court and the clerk then docketed those materials in the court record the same day.

This is not the first time such a scenario has been presented to this court. See Joyner v. Dooley, 2011 WL 8194280 at * 5-10 (D.S.D. Nov. 9, 2011) (detailing irregularities with the docketing of Joyner's petition in the state court in association with Judge Davis' denial of Joyner's petition). Although the court is aware that the rule requiring docketing for a pleading to be considered "filed" is the normal rule, it is also true that a state may not frustrate an inmate's ability to seek habeas relief by refusing or delaying the processing of his habeas petition. See Critchley v. Thaler, 586 F.3d 318, 320-21 (5th Cir. 2009); Herbert v. Dickhaut, 724 F. Supp. 2d 132, 135-36 (D. Mass. 2010).

Under the record presented before this court, there are unresolved factual questions concerning when the clerk of the circuit court first received Mr. Burritt's first habeas petition.  Accordingly, given the fact that this habeas proceeding is in its infancy, the court gives Mr. Burritt the benefit of the doubt. For purposes of considering the parties' responses to this court's order to show cause, the court assumes that the clerk of court received Mr. Burritt's first habeas petition on July 24, 2013.  If appropriate, respondent may later introduce evidence to clear up this factual issue.

Given the court's above rulings on whether Mr. Burritt's motion to the state supreme court was "properly filed" and the deemed receipt date of his first petition for state habeas relief, the court calculates Mr. Burritt's statute of limitations as follows:

| DATE | ACTION | DAYS COUNTED TOWARD SOL |
|------|--------|--------------------------|
| 03-25-13 | State Supreme Court issues decision on direct appeal | |
| 06-24-13 | Finality After Direct Appeal—SOL Begins Running (90 days after supreme court opinion) | |
| 07-24-13 | Filing of 1st State Habeas Petition—SOL Tolled | 30 days (from June 24 – July 24) |
| 08-13-13 | Judge Davis' Denial of 1st State Habeas Petition—SOL Resumes Running | |
| 03-24-14 | 1st Federal Habeas Filed—no tolling | |
| 07-21-14 | Dismissal of 1st Federal Habeas—no tolling | |
| 07-25-14 | Filing of 2d State Habeas Petition—SOL tolled | 346 days (from Aug. 13, 2013 – July 25, 2014) |

21

| 10-15-14 | Dismissal of 2d State Habeas Petition—SOL resumes running | |
| 10-24-14 | Filing of 2d Federal Habeas Petition | 9 days[3] |
| | | **TOTAL DAYS ELAPSED:  385** |

Neither 2014 nor 2013 were leap years.  The period of one year in a non-leap year is 365 days.[4]  Mr. Burritt's petition was not filed within this time period.

The court notes that the one-year AEDPA statute of limitations is not a jurisdictional bar.  Baker v. Norris, 321 F.3d 769, 771 (8th Cir. 2003).  The time limit is subject to equitable tolling when "extraordinary circumstances" beyond a prisoner's control make it impossible to file a petition on time.  Id.  A petitioner seeking equitable tolling must show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.  Pace, 544 U.S. at 418.  However, Mr. Burritt makes no assertion that the statute of limitations should be equitably tolled in his case.  He is represented by counsel in these proceedings.  No facts are apparent on the record that would support the application of equitable tolling.

_____

[3] There is no question that Mr. Burritt does not get the benefit of tolling after Judge Davis denied his second state habeas petition.  Under state law, no appeal from that decision is allowed.  See SDCL § 21-27-5.1.

[4] The court notes that, although the above calculation appears to show that Mr. Burritt's petition was only twenty days late, that calculation gives Mr. Burritt the benefit of the doubt, as discussed above, by assuming that Mr. Burritt's state habeas petitions were received by the state clerk of court one day after they were mailed, even though they were docketed many weeks later.

This court concludes that Mr. Burritt's filing of his current federal habeas petition was not timely.  Accordingly, the court recommends that Mr. Burritt's instant federal habeas petition be dismissed with prejudice.  An alternate basis for dismissal also exists:  Mr. Burritt procedurally defaulted his claims.

**B.      Procedural Default**

Respondent also urges that Mr. Burritt's habeas petition be dismissed pursuant to the doctrine of procedural default.  "A district court need not consider the merits of a procedurally defaulted claim." Van Denton v. Norris, 71 F.3d 1404, 1409 (8th Cir. 1995) (citations omitted).  The concepts of exhaustion of state remedies and procedural default are similar, but not identical.  A dismissal on grounds of procedural default is a dismissal *with* prejudice, unlike a dismissal for failure to exhaust state remedies, which is without prejudice.  Compare Armstrong v. Iowa, 418 F.3d 924, 926-27 (8th Cir. 2005) (dismissal with prejudice is appropriate where the ground for dismissal is procedural default), with Carmichael v. White, 163 F.3d 1044, 1045-46 (8th Cir. 1998) (dismissal for failure to exhaust state remedies where state remedies remain available to petitioner should be a dismissal without prejudice).

A federal court may not consider a claim for relief in a habeas corpus petition if the petitioner has not exhausted his state remedies.  See 28 U.S.C. § 2254(b).  "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).  If a ground for

23

relief in the petitioner's claim makes factual or legal arguments that were not present in the petitioner's state claim, then the ground is not exhausted. Kenley v. Armontrout, 937 F.2d 1298, 1302 (8th Cir. 1991). The exhaustion doctrine protects the state courts' role in enforcing federal law and prevents the disruption of state judicial proceedings. Rose v. Lundy, 455 U.S. 509, 518 (1982). The Supreme Court has stated:

> Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

Rose, 455 U.S. at 518 (citations omitted). This rule requires state prisoners to seek complete relief on all claims in state court prior to filing a writ of habeas corpus in federal court. Federal courts should, therefore, dismiss a petition for a writ of habeas corpus that contains claims that the petitioner did not exhaust at the state level. See 28 U.S.C. § 2254; Rose, 455 U.S. at 522.

"A claim is considered exhausted when the petitioner has afforded the highest state court a fair opportunity to rule on the factual and theoretical substance of his claim." Ashker v. Leapley, 5 F.3d 1178, 1179 (8th Cir. 1993). Section 2254(c) requires "that state prisoners give state courts a *fair* opportunity to act on their claims." O'Sullivan, 526 U.S. at 844. "Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are

24

presented to the federal courts, [the Supreme Court has held] that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." Id. at 845. Federal courts should, therefore, dismiss a petition for a writ of habeas corpus that contains claims which were not exhausted at the state level. See 28 U.S.C. § 2254; Rose, 455 U.S. at 522.

Here, it is clear that Mr. Burritt failed to exhaust his state remedies. The claims he seeks to assert in his current federal petition were not presented in his first state court habeas petition. That was the reason for dismissal of Mr. Burritt's first federal habeas petition. See Burritt I, Docket Nos. 8 & 9. When Mr. Burritt returned to state court and filed a second habeas petition (containing the claims he wished to assert in federal court), Judge Davis refused to review that petition on procedural grounds: the claims were not in Mr. Burritt's first state petition, and he did not allege newly discovered evidence or a new constitutional rule of law that would apply retroactively. See Burritt II, Docket No. 1-9

Judge Davis' decision was premised on SDCL § 21-27-5.1, which provides as follows:

> A claim presented in a second or subsequent habeas corpus application under this chapter that was presented in a prior application under this chapter or otherwise to the courts of this state by the same applicant shall be dismissed.

> Before a second or subsequent application for a writ of habeas corpus may be filed, the applicant shall move in the circuit court of appropriate jurisdiction for an order authorizing the applicant to file the application.

25

The assigned judge shall enter an order denying leave to file a second or successive application for a writ of habeas corpus unless:

      (1) The applicant identifies newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable fact finder would have found the applicant guilty of the underlying offense; or

      (2) The application raises a new rule of constitutional law, made retroactive to cases on collateral review by the Unites States Supreme Court and the South Dakota Supreme Court, that was previously unavailable.  The grant or denial of an authorization by the circuit court to file a second or subsequent application shall not be appealable.

See SDCL § 21-27-5.1.

This court concludes that Mr. Burritt has not exhausted his state avenues for relief by affording the highest state court a fair opportunity to act on his claims prior to filing the instant petition in federal court.  See O'Sullivan, 526 U.S. at 842.  At no time—during his first habeas petition or his second—did Mr. Burritt afford the state courts an opportunity to rule on the merits of the claims he now asserts in this court.

However, before dismissing a federal habeas petition on the grounds that a petitioner has not exhausted his state remedies, the court must be able to conclude that there is a state remedy presently available to the petitioner.  Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988) (stating that one of the four elements a federal court must consider is whether the exhaustion requirement is nevertheless technically met because no "currently available,

non-futile state remedies through which petitioner can present his claim" exist)
(citations omitted).

A review of SDCL § 21-27-5.1 reveals that Mr. Burritt does not currently
enjoy any non-futile state avenue for pursuing exhaustion of state remedies.
Welch v. Lund, 616 F.3d 756, 760 (8th Cir. 2010) (stating that by failing to
pursue discretionary appeal to Iowa Supreme Court, federal petitioner had
"technically" exhausted state remedies because no further remedy was
available to him in state court) (citing Engle v. Isaac, 456 U.S. 107, 125 n.28
(1982)).  The circuit court has denied his second habeas petition on procedural
grounds and that order is not appealable.  See SDCL § 21-27-5.1.  Therefore,
although Mr. Burritt did not first present to the highest state court the claims
contained in his federal habeas petition, this court cannot dismiss his petition
for failure to exhaust because Mr. Burritt does not currently enjoy any non-
futile state avenue for pursuing exhaustion of state remedies.  Dismissal, if it is
warranted, must be on grounds of procedural default rather than failure to
exhaust.

Closely related to the doctrine of state court exhaustion is the doctrine of
procedural default.  Both doctrines are animated by the same principles of
comity—that is, in our dual system of government, federal courts should defer
action on habeas matters before them when to act on those petitions would
undermine the state courts' authority, which have equal obligations to uphold
the constitution.  See Coleman v. Thompson, 501 U.S. 722, 731 (1991) (quoting
Rose, 455 U.S. at 518, overruled in part on other grounds by Martinez v. Ryan,

27

___ U.S. ___, 132 S. Ct. 1309 (2012),[5] superseded in part on other grounds by statute as recognized in <u>Duncan v. Atchison</u>, 2014 WL 4062737 (N.D. Ill. Aug. 13, 2014).  If a petitioner has failed to exhaust administrative remedies, and further non-futile remedies are still available to him in state court, then the federal court dismisses the federal petition without prejudice, allowing the petitioner to exhaust his state court remedies.  <u>Carmichael</u>, 163 F.3d at 1045. Where the petitioner has no further state remedies available to him, analysis of the procedural default doctrine is the next step.

Procedural default is sometimes called the "adequate and independent state grounds" doctrine.  A federal habeas petitioner who has defaulted his federal claims in state court by failing to meet the state's procedural rules for presenting those claims, has committed "procedural default."  <u>Coleman</u>, 501 U.S. at 731-32, 735 n.1.  If federal courts allowed such claims to be heard in federal court, they would be allowing habeas petitioners to perform an "end run" around state procedural rules.  <u>Id.</u>  However, where no further non-futile remedy exists in state court, it is not feasible to require the petitioner to return

---

[5] The <u>Martinez</u> decision modified that part of the <u>Coleman</u> decision involving whether ineffective assistance of habeas counsel can constitute "cause" excusing a procedural default.  <u>See</u> <u>Martinez v. Ryan</u>, ___ U.S. ___, 132 S. Ct. 1309, 1315 (2012) (holding that, where state law required that ineffective assistance of counsel claims may not be raised until habeas proceedings, ineffectiveness of habeas counsel may supply "cause" sufficient to excuse a procedural default).  <u>Martinez</u> has no application to this case as Mr. Burritt was never represented by habeas counsel in state court.  Therefore, since there was no counsel, there can be no mistake of counsel in filing the habeas petitions discussed in this opinion.

to state court as would be the case in a dismissal for failure to exhaust state remedies.

In the Coleman case, the habeas petitioner, Coleman, had defaulted all of his federal claims by filing his notice of appeal from the state trial court three days late. Coleman, 501 U.S. at 727-28, 749. The state appellate court then refused to hear Coleman's appeal on the basis of his late-filing of his notice of appeal. Id. at 740. The Court held "[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Id. at 750. See also Ruiz v. Norris, 71 F.3d 1404, 1409 (8th Cir. 1995) ("A district court need not consider the merits of a procedurally defaulted claim.") (citations omitted).

"Adequate and independent state grounds" exist for the state court's decision if the decision of the state court rests on state law ground that is independent of the federal question and adequate to support the judgment. Coleman, 501 U.S. at 729. "This rule applies whether the state law ground is substantive or procedural." Id. at 729. "[A] state procedural ground is not adequate unless the procedural rule is strictly or regularly followed." Johnson

29

v. Mississippi, 486 U.S. 578, 587 (1988).  Mr. Burritt makes no allegation that SDCL § 21-27-5.1 is arbitrarily or irregularly enforced. [6]

"The federal court looks to the last, reasoned state court opinion dealing with the claim to determine whether a specific contention is procedurally defaulted." Clemons v. Leubbers, 381 F.3d 744, 750 (8th Cir. 2004) (citations omitted).[7]  Because the last reasoned state court opinion dealing with Mr. Burritt's habeas claims did not address their merits but rejected them on procedural grounds (i.e. the claims were not alleged in his first petition and did not fit the allowed grounds for a second petition), this Court is precluded from reviewing them unless Mr. Burritt establishes (1) cause and prejudice or (2) fundamental miscarriage of justice. Coleman, 501 U.S. at 750; Welch, 616 F.3d at 758, 760 (citing O'Sullivan, 526 U.S. at 847); Abdullah, 75 F.3d at 411; Wiegers v.Weber, 37 Fed. Appx. 218, 219-20 (8th Cir. 2002) (unpublished) (prisoner's failure to timely appeal denial of state habeas resulted in failure to give South Dakota one full opportunity to resolve any constitutional issue by invoking one complete round of South Dakota's established appellate process–and thus his claims were procedurally defaulted).  An evidentiary

---

[6] If Mr. Burritt showed that SDCL § 21-27-5.1 was not a firmly established and regularly followed rule of procedure, this might also excuse a procedural default.  James v. Kentucky, 466 U.S. 341, 348 (1984).

[7] If the last state court to be presented with the petitioner's federal claims reaches the merits of those claims, it removes any bar to the federal court subsequently considering those claims.  Clemons, 381 F.3d at 750.  This did not happen in Mr. Burritt's case as Judge Davis, the last state court to consider Mr. Burritt's claims, refused to reach the merits of those claims.  See Docket No. 1-9.

hearing is not required on the cause and prejudice inquiry if the court can determine as a matter of law that the petitioner cannot satisfy the standard. McCleskey v. Zant, 499 U.S. 467, 494 (1991).[8]

### 1.   Whether Mr. Burritt Can Demonstrate Cause & Prejudice

A demonstration of the "cause" element of the cause and prejudice test "must be something external to the petitioner" and requires also "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Coleman v. Thompson, 501 U.S. 722, 753 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).  It is Mr. Burritt's burden to establish cause and prejudice sufficient to excuse a procedural default.  Nave v. Delo, 62 F.3d 1024, 1030 (8th Cir. 1995) (citing Sawyer v. Whitley, 505 U.S. 333, 337-39 (1992)).

---

[8] There is authority to the effect that a claim cannot be considered to be procedurally defaulted unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.  Nicklasson v. Roper, 491 F.3d 830, 839 (8th Cir. 2007) (citing Harris v. Reed, 489 U.S. 255, 263 (1989)).  This is the situation Mr. Burritt finds himself in.  The requirement seems to be disregarded where the procedural default consists in failing to seek review altogether before a particular court–in which case the court has not issued a decision and explained the basis for its decision.  O'Sullivan, 526 U.S. at 847; Welch, 616 F.3d at 760.

These apparently inconsistent holdings can be harmonized, however, by remembering that the reason for the exhaustion and procedural default rules is founded in concerns for comity towards state courts.  Therefore, if, despite a procedural default, a state court is willing to review a matter on the merits, federal courts do no disservice to comity concerns by also agreeing to reach the merits.  Nicklasson, 491 F.3d at 839.  Thus, in such cases, procedural default in state court would not bar later federal review of the claims.  Id.  Likewise, if the procedural default consists, as here, in failing altogether to petition a state court for review, federal courts would trample comity concerns by reaching the merits of such cases.  O'Sullivan, 526 U.S. at 846-48.  To do so would present an "end run" around the exhaustion and procedural default rules.

Mr. Burritt makes no attempt to satisfy the cause and prejudice standard.  Instead, he argues that failure to hear the merits of his claims will result in a fundamental miscarriage of justice.  The court, accordingly, holds that the cause and prejudice standard is not met in this case.

## 2.    Fundamental Miscarriage of Justice

"In an effort to balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case, the Court has recognized a miscarriage of justice exception."  House v. Bell, 547 U.S. 518, 536 (2006).  "The fundamental miscarriage of justice exception. . . is only available to a petitioner who demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent."  McCall v. Benson, 114 F.3d 754, 758 (8th Cir. 1997).  The applicable analysis is as follows:

> A petitioner who raises a gateway claim of actual innocence must satisfy a two-part test.  First, the petitioner's allegations of constitutional error must be supported by new reliable evidence that was not presented at trial.  Second, the petitioner must establish that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.

Weeks v. Bowersox, 119 F.3d 1342, 1351 (8th Cir. 1997); see also Amrine v. Bowersox, 238 F.3d 1023, 1028 (8th Cir. 2001) (same).  This is a demanding standard, permitting review in only the most extraordinary cases.  House, 547 U.S. at 538.

The new evidence relied upon by a habeas petitioner in support of his claim of actual innocence must be not only evidence that was not available at

32

trial.  It must also be evidence that was not discoverable at the time of trial through the exercise of due diligence.  Kidd v. Norman, 651 F.3d 947, 953 (8th Cir. 2011).  But see Gomez v. Jaimet, 350 F.3d 673, 679-80 (7th Cir. 2003); Griffin v. Johnson, 350 F.3d 956, 962-63 (9th Cir. 2003) (both holding that evidence is "new" for purposes of actual innocence assertion if it was not presented at the petitioner's trial).[9]

Actual innocence means factual innocence, it does not mean mere legal insufficiency.  Bousley v. United States, 523 U.S. 614,  623 (1988).  Actual innocence claims are rarely successful as they require the petitioner to carry an exacting burden.  Schlup v. Delo, 513 U.S. 298, 324 (1995).  In order to show actual innocence, Mr. Burritt must (1) produce "new reliable evidence" not presented previously; and (2) he must "show that, in light of all the evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt of the crime for which he pleaded guilty and was convicted."  Schlup, 513 U.S. at 324; United States v. Apker, 174 F.3d 934, 938-39 (8th Cir. 1999).

Evidence is "new" only if it was not available at the time of the trial and if it could not have been discovered earlier through the exercise of due diligence.

---

[9] There is a split of authority among the federal circuit courts of appeals as to what standard applies to determine whether evidence is "new" in support of an actual innocence claim.  The Eighth Circuit, along with the Third Circuit, require that the evidence could not have been presented at trial and could not have been discovered before trial with the exercise of due diligence.  Kidd, 651 F.3d at 953; Hubbard v. Pinchak, 378 F.3d 333, 341 (3d Cir. 2004).  The Seventh and Ninth Circuits hold that any evidence that was not presented at trial is "new."  Gomez, 350 F.3d at 679-80; Griffin, 350 F.3d at 962-63.

<u>Johnson v. Norris</u>, 170 F.3d 816, 818 (8th Cir. 1999).  A petitioner can make the new evidence showing only where he demonstrates that the factual basis for the evidence did not exist at the time of the trial and could not have been presented earlier.  <u>Id.</u>  The evidence must not only be "new" but it must also be "reliable."  <u>Schlup</u>, 513 U.S. at 324.  Mr. Burritt presents five assertions of "new, reliable evidence."  Each is discussed in turn.

### a.    Testimony of William and Ernest Burritt

Mr. Burritt states that his attorney was ineffective because the attorney did not obtain subpoenas for William Burritt and Ernest Burritt to testify at trial.  However, Mr. Burritt never describes what, specifically, William and Ernest would have testified to if they had been subpoenaed for trial.  All Mr. Burritt states is that they "were both present and knowledgeable of the events that led to the arrest of" Mr. Burritt.  <u>See</u> Docket No. 6 at p.7.  Further, Mr. Burritt states that he gave the names and details regarding William and Ernest to his attorney and the attorney failed to call them as witnesses.

Mr. Burritt has failed to allege that William and Ernest's testimony constitute new and reliable evidence.  Obviously, if Mr. Burritt gave the names to his attorney at trial, the information was known at the time of trial.  This does not constitute "new" evidence.  <u>Kidd</u>, 651 F.3d at 953.

Furthermore, it is Mr. Burritt's burden to show that if William and Ernest's testimony had been presented, no reasonable jury would have convicted him.  Mr. Burritt never describes with any particularity what William and Ernest's testimony would have been, had they been called to testify.  In

34

order to satisfy his burden, Mr. Burritt is required to come forward with this information.  Then he must explain what the evidence was at his trial and how the new evidence would have changed the jury's verdict.  <u>Schlup</u>, 513 U.S. at 324.  Mr. Burritt has failed to carry any part of his burden to show that William and Ernest's testimony constitutes new and reliable evidence that would have changed the jury's verdict.

### b.    Sweatpants

Mr. Burritt alleges that his attorney failed to establish at trial that the sweatpants the victim was found to have on at the time her boyfriend discovered her were a borrowed pair that were several sizes too big for the victim.  If this evidence had been introduced at trial, Mr. Burritt argues that the jury could have reasoned that the sweatpants simply slipped down the victim's legs because they were too big rather than crediting the prosecution's theory that Mr. Burritt pulled down the victim's sweatpants.

Mr. Burritt never alleges that the information about the size and origin of the sweatpants was new information.  He never alleges that this information could not have been obtained at the time of trial through the exercise of due diligence.  Accordingly, Mr. Burritt has not carried his burden to establish that the evidence concerning the sweatpants was "new."

### c.    Mr. Burritt's Statement to Another Prisoner

While Mr. Burritt was in police custody, another detainee asked him what he was being charged with.  Mr. Burritt replied that "I raped a girl.  I don't

know why I'm here."  At Mr. Burritt's trial, a booking officer from the jail was allowed to testify that Mr. Burritt stated "I raped a girl."

Mr. Burritt alleges that the use of this statement at trial, without objection by Mr. Burritt's counsel, prejudiced him because the statement was taken out of context.  Mr. Burritt argues that his attorney should have obtained a ruling from the court that the statement was inadmissible or, if admissible, that his entire statement be used so that the jury could hear it in context.

This information was obviously known at trial as the prosecution introduced it into evidence at that time.  It is, therefore, not "new" evidence. This does not provide grounds for Mr. Burritt's fundamental miscarriage of justice claim.

### d.     Prejudicial Statements by Defense Counsel

Mr. Burritt alleges his attorney was ineffective at trial because he made some statements that the prospective jurors may have taken to be prejudicial toward Mr. Burritt.  Again, this was something that was known at the time of trial.  It is not "new" evidence.  It does not support Mr. Burritt's claim of fundamental miscarriage of justice.

### e.     Voir Dire Based on Mr. Burritt's Race

Mr. Burritt alleges his attorney was ineffective because he failed to question prospective jurors about racial bias.  Mr. Burritt is Native American and his trial took place just after a highly-publicized event he alleges inflamed the community's racial biases.  Again, Mr. Burritt misconstrues the nature of

his burden to show fundamental miscarriage of justice.  Mr. Burritt's race is an immutable characteristic.  The highly-public event was known to nearly every citizen of Rapid City at the time of Mr. Burritt's trial.  The evidence he points to now is simply not "new" evidence.

As discussed above, in order to show that there has been a fundamental miscarriage of justice, Mr. Burritt has the burden to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup, 513 U.S. at 327.  Mr. Burritt must establish factual innocence, not merely procedural errors.  Bousley, 523 U.S. at 623.  He must show that, in light of the new evidence, "it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt of the crime for which he . . .was convicted."  Schlup, 513 U.S. at 324; Apker, 174 F.3d at 938-39.  This is a stronger showing required than the mere showing of prejudice.  Schlup, 513 U.S. at 327.  None of the five categories of asserted "evidence"—alone or in the aggregate—constitute "new" evidence and none lead the court to conclude that Mr. Burritt is actually innocent.  Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006); Embrey v. Hershberger, 131 F.3d 739, 741 (8th Cir. 1997) (both denying application of fundamental miscarriage of justice exception where habeas petitioner failed to show that there was any new evidence).  Accordingly, the court holds that Mr. Burritt's procedural default should not be excused.

## CONCLUSION

Based upon the above facts, law and analysis, this court respectfully recommends that Mr. Burritt's second federal habeas petition be dismissed with prejudice, on the grounds of procedural default and failure to timely file his petition in this court.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED April 8, 2015.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge

38